David Halberstadter (SBN 107033)
david.halberstadter@katten.com
Amelia E. Bruckner (SBN 341515)
amelia.bruckner@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:  310.788.4400
Facsimile:   310.788.4471

Attorneys for Defendants
LIONS GATE ENTERTAINMENT
CORPORATION; STARZ
ENTERTAINMENT, LLC; CHERNIN
ENTERTAINMENT, LLC; LIZ GARCIA;
PATRIK-IAN POLK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NICOLE GILBERT-DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>LIONS GATE ENTERTAINMENT CORPORATION; STARZ ENTERTAINMENT, LLC; CHERNIN ENTERTAINMENT, LLC; KATORI HALL; LIZ GARCIA; PATRIK-IAN POLK,<br><br>Defendants. | **CASE NO. 2:23-cv-02147-SVW-AGR**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Fed. R. Civ. P. 54]<br><br>Assigned to District Judge Stephen V. Wilson and Magistrate Judge Alicia G. Rosenberg<br><br>*(Declaration of David Halberstadter and [Proposed] Order filed concurrently herewith)*<br><br>Date: Feburary 5, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 10A |

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7360 fax

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 5, 2024 at 1:30 p.m., or as soon thereafter as the parties may be heard, before the Honorable Stephen V. Wilson, United States District Judge, in Courtroom 10A, located at 350 W. First Street, Los Angeles, California 90012, Defendants Lions Gate Entertainment Corporation ("Lionsgate"), Starz Entertainment, LLC ("Starz"), Chernin Entertainment, LLC, Liz Garcia, and Patrik-Ian Polk (collectively, "Defendants") will and hereby do move for an order awarding (i) Defendants' reasonable attorneys' fees in connection with the defense of this action in the amount of $1,045,436, (ii) Defendants' recoverable costs in connection with the defense of this action in the amount of $45,447, and (iii) Defendants' fees in connection with this motion in the amount of $38,610 (for a total of $$1,129,493), pursuant to Federal Rule of Civil Procedure 54(d) and 17 U.S.C. Section 505.

Defendants are entitled to an award of fees and costs because on December 7, 2023, the Court granted Defendants' motion for summary judgment as to Plaintiff Nicole Gilbert-Daniels' ("Plaintiff") complaint for copyright infringement. An award of fees under the Copyright Act is proper for the following reasons: (1) Defendants achieved a complete success on the merits in defense of Plaintiff's copyright infringement claims; (2) Plaintiff's claims were objectively unreasonable, if not frivolous; (3) Plaintiff's conduct prior to and during the course of the litigation demonstrated improper motives, including an intention to pressure Defendants into an unjustified and exorbitant settlement and promote Plaintiff's entertainment career; (4) a fee award would promote the goals of compensation and deterrence by making Defendants whole while deterring similar plaintiffs from filing meritless lawsuits and not deterring meritorious copyright cases; and (5) a fee award would further the Copyright Act's purpose of protecting creative speech. Defendants also are entitled to the fees they incurred in preparing and filing this motion.

The hourly rates of Defendants' counsel are indisputably reasonable given the prevailing market rates charged by attorneys practicing in this district with similar levels

of experience and expertise. The amount of fees Defendants seek to recover is likewise reasonable in light of the substantial amount of time counsel of record was required to spend in defense of Plaintiff's action, beginning when Plaintiff first asserted her claims in April 2021. Counsel's necessary activity included initially moving to dismiss or transfer the action from the Northern District of Georgia to the Central District of California, thereafter filing multiple briefs in connection with Defendants' motion for summary judgment, engaging in intensive discovery over the 60-period ordered by the Court, and filing subsequent supplemental briefing. The costs Defendants seek to recover, which include deposition reporting and transcripts, express delivery charges, PACER fees, Westlaw legal research charges and Copyright Office charges, also are reasonable and appropriate.

This Motion has been made following the conferences of the parties pursuant to Local Rule 7-3, which took place on December 7 and December 13, 2023. (DH Decl., ¶¶ 27, 28.)

This Motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities; the concurrently filed Declaration of David Halberstadter; the pleadings and papers on file in this action; and such other evidence and argument as may be presented to this Court at or before the hearing on this Motion.

Respectfully submitted,

Dated:  January 8, 2024                    **KATTEN MUCHIN ROSENMAN LLP**


By: /s/ *David Halberstadter*
        David Halberstadter
        Attorneys for Defendants
        LIONS GATE ENTERTAINMENT
        CORPORATION; STARZ
        ENTERTAINMENT, LLC; CHERNIN
        ENTERTAINMENT, LLC; LIZ GARCIA;
        PATRIK-IAN POLK

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

300332975

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................. 1

II.   RELEVANT PROCEDURAL HISTORY ................................ 2

    A.   Pre-Litigation History ................................................ 2

    B.   Litigation History ..................................................... 2

        1.   Litigation in the Northern District of Georgia .................... 2

        2.   Initial Proceedings in the Central District of California ............ 3

        3.   The 60-Day Discovery Period .................................... 4

        4.   Post-Discovery Proceedings ..................................... 5

III.  LEGAL STANDARDS ........................................................ 6

IV.   DEFENDANTS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES IN DEFENDING AGAINST PLAINTIFF'S CLAIMS. ........................ 7

    A.   Defendant Achieved Complete Success On The Merits. ............. 7

    B.   Plaintiff's Claims Were Objectively Unreasonable And/Or Frivolous. ..... 8

    C.   Plaintiff's Motives In This Action Were Improper. ................... 11

    D.   Awarding Attorneys' Fees And Costs Would Deter Meritless Infringement Claims. ............................................... 15

    E.   Granting This Fee Motion Would Further The Interests Of The Copyright Act. .................................................................. 16

V.    DEFENDANTS' ATTORNEYS' FEES AND COSTS ARE REASONABLE. 17

    A.   Defendants' Attorneys' Rates Are Reasonable. ..................... 17

    B.   Counsel for Defendant Spent A Reasonable Amount Of Time Litigating The Merits Of Plaintiff's Action, Considering How Much Work Was Involved. ............................................................. 20

    C.   Defendants Requests An Award of Allowable Costs. ............... 24

    D.   Defendants are Also Entitled To Recover Fees And Costs Incurred In Connection With This Motion. ..................................... 25

VI.   CONCLUSION ............................................................... 25

Katten

Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0449 tel  213.788.7360 fax

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AF Holdings LLC v. Navasca*,
    No. C-12-2396 EMC, 2013 WL 3815677 (N.D. Cal. July 22, 2013) ...................... 15

*Baker v. Urban Outfitters, Inc.*,
    431 F.Supp.2d 351 (S.D.N.Y. 2006) ........................................................ 12

*Blum v. Stevenson*,
    465 U.S. 886 (1984) .............................................................................. 17

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ................................................................. 25

*DuckHole Inc. v. NBCUniversal Media LLC*,
    No. CV-12-10077-BRO, 2013 WL 5797204 (C.D. Cal. Oct. 25, 2013) ............... 7, 9

*Erickson Prods. Inc. v. Kast*,
    No. 5:13-CV-05472-HRL, 2016 WL 3951659 (N.D. Cal. July 22,
    2016) .................................................................................................. 8

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996) ............................................................... 9, 17

*Ferland v. Conrad Credit Corp.*,
    244 F.3d 1145 (9th Cir. 2001) ............................................................... 17

*Fogerty v. Fantasy Inc.*,
    510 U.S. 517 (1994) .................................................................. 6, 7, 16, 17

*Gable v. Nat'l Broad. Co.*,
    No. CV084013SVWFFMX, 2010 WL 11506430 (C.D. Cal. Aug. 6,
    2010) .......................................................................................... 8, 10, 16

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) ............................................................... 18

*Gilbert v. New Line Prods., Inc. et al.*,
    No. CV 09-02231-RGK, 2010 WL 5790688 (C.D. Cal. Dec. 6, 2010) ................... 8

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4445 tel    213.788.7360 fax

ii

*Glass v. Sue*,
   No. CV 09-8570-RGK SHX, 2011 WL 561028 (C.D. Cal. Feb. 8,
   2011) ........................................................................................................... 8, 9

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .......................................................................... 18

*Hensley v. Eckerhart*,
   461 U.S. 424 ................................................................................................ 18

*In re Nucorp Energy, Inc.*,
   764 F.2d 655 (9th Cir. 1985) ...................................................................... 25

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014) .................................................................... 16

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016)......................................................................... 6, 7, 8, 16

*Lawrence v. Sony Pictures Entm't Inc.*,
   No. 210CV04737SVWEX, 2011 WL 13217267 (C.D. Cal. Oct. 5,
   2011), *aff'd*, 534 F. App'x 651 (9th Cir. 2013) ................................... 1, 7, 8

*Marcus*, 2017 WL 5592470 .............................................................................. 8, 11

*Mattel, Inc. v. MGA Entm't, Inc.*,
   No. CV 04-9049 DOC RNBX, 2011 WL 3420603, *aff'd sub nom.*
   *Mattel, Inc v. MGA Ent., Inc.*, 705 F.3d 1108 (9th Cir. 2013) ................ 17

*Moi v. Chihuly Studio, Inc*,
   2019 WL 6033367 (C.D. Cal. Nov. 14, 2019) ...................................... 7, 24

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ................................................................. 17, 18

*Oviatt v. Pearce*,
   954 F.2d 1470 (9th Cir. 1992) .................................................................... 18

*Pazarlama A.S. v. SayGames, LLC, et al.*,
   No. CV-07916-EMC, 2023 WL 3260528 (N.D. Cal. May 4, 2023)......................... 19

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ...................................................................... 8

iii

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-07098-AB SHX, 2015 WL 1746484, *aff'd,* 847 F.3d 657
    (9th Cir. 2017)..................................................................................8, 9, 20, 24

*Scott v. Meyer*,
    No. CV 09-6076 ODW(RZX), 2010 WL 2569286 (C.D. Cal. June 21,
    2010) ...........................................................................................................15

*Shame On You Prods., Inc. v. Banks*,
    893 F.3d 661 (9th Cir. 2018) ..........................................................7, 11, 17

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ...................................................................6, 24

*Title Tracy Anderson Mind & Body v. Roup et al*,
    No. CV-04735-PSG, 2023 WL 6890744 (C.D. Cal. 2023).....................18, 19

*Tresóna Multimedia, Ltd. Liab. Co. v. Burbank High Sch. Vocal Music
    Ass'n*,
    953 F.3d 638 (9th Cir. 2020) .......................................................................7

*Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006) .......................................................................7

*WB Music Corp. v. Royce Int'l Broad. Corp.*,
    2018 WL 6177237 (C.D. Cal. July 9, 2018)............................................20

**Statutes**

17 U.S.C. § 505.................................................................................*passim*

**Rules**

Fed. R. Civ. Proc. 16.......................................................................................3

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.2445 tel    213.788.7340 fax

iv

300332975

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiff filed a complaint for copyright infringement based on her three registered works, all titled *Soul Kittens Cabaret* ("SKC"). She claimed that Defendants infringed her works in connection with the creation and distribution of the Starz television series *P-Valley*. The Court granted Defendants' motion for summary judgment (the "MSJ"), holding that after filtering out the unprotectable elements of the works and comparing the remaining elements, no reasonable jury could find substantial similarity between the plots, themes, moods, settings, paces, characters, and dialogue of *SKC* and *P-Valley*.

As the prevailing party, Defendants are entitled to recover their attorneys' fees and costs pursuant to the Copyright Act because (i) Defendants achieved a complete victory in their defense against Plaintiff's claims, (ii) Plaintiff asserted an objectively unreasonable if not frivolous claim, (iii) Plaintiff's conduct before and during the litigation evidences Plaintiff's improper motivations in pursuing her claims, (iv) an award of attorneys' fees is necessary to advance considerations of compensation (*i.e.*, to ensure that other defendants are not discouraged from protecting their legitimate rights) and deterrence (*i.e.*, to discourage other plaintiffs from asserting similarly unmeritorious claims), and (v) these factors also further the purposes of the Copyright Act.

The fees that Defendants seek are manifestly reasonable in light of the prevailing market rates for attorneys with a similar level of experience and expertise and the time necessarily spent in the defense of Plaintiff's claims over the past three years. *See, e.g., Lawrence v. Sony Pictures Entm't Inc.*, No. 210CV04737SVWEX, 2011 WL 13217267, at *3 (C.D. Cal. Oct. 5, 2011) (allowing recovery for 800 hours spent defending against meritless infringement claim), *aff'd*, 534 F. App'x 651 (9th Cir. 2013). Defendants therefore respectfully request that the Court award their reasonable attorneys' fees and costs in the total amount of $1,090,883, in addition to the $38,610 in fees they incurred in connection with this motion.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

## II. RELEVANT PROCEDURAL HISTORY

### A. <u>Pre-Litigation History</u>

Defendants first learned of Plaintiff's infringement claims when, on April 14, 2021, her counsel sent a pre-litigation claim letter to all the Defendants. The letter comprised 21 pages inclusive of exhibits and identified 47 purported "scene similarities" between *SKC* and *P-Valley*. The letter also included a link to a video that purported to be an audiovisual scene-by-scene comparison of Plaintiff's works to *P-Valley*. (Declaration of David Halberstadter ("DH Decl."), ¶ 3 and Exh. 1.)

After reviewing Plaintiff's claim letter, the purported scene-by-scene comparison, Plaintiff's works and the first season of *P-Valley*, Defendants on May 11, 2021, sent Plaintiff a detailed response, explaining why Plaintiff's infringement claims – and particularly Plaintiff's 47 alleged similarities – were meritless. (*Id.* at ¶ 4 and Exh. 2.) Following this exchange of letters, Defendants' counsel held a teleconference with Plaintiff's counsel on May 18, 2021, to discuss further Plaintiff's claims and Defendants' position regarding their lack of merit. This teleconference was followed by a further exchange of letters between July and September 2021, in which Plaintiff continued to insist that her claims were valid, and Defendants maintained that they were meritless, if not frivolous. Plaintiff made several multimillion-dollar demands that Defendants unqualifiedly rejected as "astronomical" and "untethered to the law or facts." Defendants declined to make any counteroffer, then or later. (*Id.* at ¶ 5 and Exhs. 3-6.)[1]

### B. <u>Litigation History</u>

#### 1. <u>Litigation in the Northern District of Georgia</u>

Plaintiff filed her Complaint in the United States District Court for the Northern District of Georgia on January 12, 2022. (ECF No. 1). In the pre-motion meet-and-confer

---

[1] In a letter dated July 21, 2021, Plaintiff made a preliminary demand of $9 million, plus a "running royalty on all future exploitations" of *P-Valley*. In their August 4, 2021 response, Defendants rejected this demand. In a letter dated August 26, 2021, Plaintiff reduced her demand to $6.7 million. In their September 10, 2021 reply, Defendants rejected this demand, as well, stating: "Claimant's $6.7 million settlement demand is no more realistic than her original demand, and does not reflect a serious, good faith effort to resolve this dispute." (*Id.*)

300332975

1  process, Plaintiff declined to dismiss her action or consent to its transfer, which Plaintiff's

2  counsel characterized it as "laughable." (DH Decl. at ¶¶ 7 and Exh. 7.) On March 15,

3  2022, Defendants moved to dismiss the Complaint based on lack of substantial similarity;

4  alternatively, Defendants moved to transfer venue to the Central District of California.

5  (ECF No. 23.) On March 20, 2023, the court granted Defendants' motion to transfer

6  venue and denied the motion to dismiss as moot in light of the transfer. (ECF No. 34.)

7  <u>2.    Initial Proceedings in the Central District of California</u>

8  On April 7, 2023, this Court issued an Order to Show Cause why the action should

9  not be dismissed for failure to prosecute. (ECF No. 46.) In response, the parties on April

10  13, 2023, jointly filed a Stipulation requesting that the Order to Show be discharged and

11  that the Court set a responsive pleading deadline for Defendants. (ECF No. 54.) On May

12  3, 2023, the Court ordered Defendants "to re-submit their previously denied motion to

13  dismiss, (ECF No. [23]), as a motion for summary judgment." (ECF No. 60.)

14  Before Defendants' deadline to file the MSJ, Plaintiff made an *ex parte* application

15  seeking an order: (i) clarifying the Court's May 3, 2023, Minute Order and vacating the

16  July 5, 2023, hearing and instead setting a Rule 16 Scheduling Conference; or, (ii)

17  vacating the July 5, 2023 hearing and setting a modified hearing and opposition briefing

18  schedule on Defendants' MSJ. (ECF No. 63.) Following Plaintiff's reply in further

19  support of her application, the Court denied it. (ECF No. 66.)

20  Defendants filed their MSJ on May 24, 2023. (ECF No. 68.) The *only* ground

21  raised was that "there is no substantial similarity in protectable expression between

22  Plaintiff's works and Defendants' *P-Valley* series as a matter of law." The MSJ was fully

23  briefed by June 29, 2023.[2] Prior to the then-scheduled July 10, 2023, hearing date, the

24  _____

25  [2] Defendants filed a Notice of Motion, a supporting Memorandum of Points and Authorities, a Statement of Uncontroverted Material Facts and Conclusions of Law and the Declaration of Tami Sims with supporting exhibits. (ECF Nos. 68, 68-1, 68-2.)

26  Plaintiff filed a Memorandum in Opposition to the MSJ, a Statement of Genuine Disputes of Material Fact and a declaration from Plaintiff with supporting exhibits. (ECF Nos. 70, 71, 72.) Defendants then filed a Reply Memorandum, a Response to Plaintiff's Statement

27  of Genuine Disputes of Material Fact, and Objections to Plaintiff's Declaration. (ECF Nos. 75, 76, 77.) After that, Plaintiff filed a Response to Defendants' Objections to

28  Plaintiff's Declaration. (ECF No. 79.)

3

Katten
KattenMuchinRosenman LLP
525 South Flower Street, Suite 1000
Los Angeles, CA 90071-3212
213.788.4445 tel   213.788.7360 fax

Court on July 5 issued an "Order Re Defendants' Summary Judgment Motion" (the "July 5 Order"), permitting a 60-day discovery period after which "Defendant may re-submit or supplement their motion for summary judgment no later than seven days after the close of discovery." (ECF No. 80.) The MSJ hearing was rescheduled to September 18, 2023.

### 3. The 60-Day Discovery Period

Immediately following the issuance of the July 5 Order, a dispute arose about the scope of discovery permitted by the order. Defendants interpreted the July 5 Order as limiting the scope of discovery during the 60-day period to that which would be relevant to the MSJ; *i.e.*, substantial similarity. Plaintiff, by contrast, claimed she was entitled to conduct discovery on any and all issues. (DH Decl., ¶ 15.) Plaintiff declined to jointly seek the Court's clarification, and instead served a deluge of written discovery and deposition requests that were unrestricted in scope.[3] (*Id.*) This written discovery was almost wholly unrelated to whether *P-Valley* was substantially similar to *SKC*. Rather, Plaintiff made the tactical decision to focus the overwhelming majority of her discovery on issues *irrelevant* to the MSJ, such as access and profits. (*Id.* at ¶ 16.)

One example of Plaintiff's discovery tactics was her insistence on taking the deposition of Lionsgate's Chief Executive Officer during the 60-day period. Plaintiff claimed to have "pitched" *SKC* as a television series to Lionsgate's CEO at a time when Lionsgate and Starz were entirely separate entertainment companies. Plaintiff knew that *P-Valley* initially had been developed by **Starz**, not by Lionsgate, well before Lionsgate's eventual acquisition of Starz. Nevertheless, Plaintiff insisted on prematurely seeking Mr. Feltheimer's deposition despite his lack of involvement in the development of the Starz series. (DH Decl., ¶ 17.)

---

[3] Among other things, Plaintiff served combined sets of requests for admission, interrogatories and requests for production on each of the named Defendants. (*Id.* at ¶ 16.) Plaintiff also served requests for admission, interrogatories and requests for production on Legendary Entertainment – even though Plaintiff had dismissed this defendant earlier in the action – and Lionsgate's CEO, Jon Feltheimer, even though he was not individually a party to the action. (*Id.*) In the aggregate, Defendants therefore had to respond to 84 requests for admission, 136 interrogatories, and 71 requests for production. (*Id.*)

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4425 tel    213.788.7360 fax

300332975

After meeting and conferring with Magistrate Judge Rosenberg on this and other discovery-related issues, Defendants filed an *ex parte* application to prevent Mr. Feltheimer's deposition from proceeding *only* during the limited 60-day discovery period. (ECF Nos. 88, 88-1, 88-2.) Following additional briefing, Judge Rosenberg issued a protective order limiting Mr. Feltheimer's deposition to two hours but declined to limit the scope of discovery to substantial similarity only. (ECF No. 97.)

Following Judge Rosenberg's ruling, Defendants served written responses to Plaintiff's discovery deluge and collectively produced more than **16,000 pages** of documents that Plaintiff had demanded. (DH Decl., ¶ 19.) Plaintiff took the depositions of the creator of *P-Valley*, a principal actor from the series, and Mr. Feltheimer. (*Id.*) Defendants, in turn, served Plaintiff with requests for production of documents, in response to which Plaintiff produced exactly **30 pages** of mostly nonresponsive documents. Defendants also took the depositions of: (i) Plaintiff; (ii) Plaintiff's key "access" witnesses (although the witness and Plaintiff's counsel prematurely ended the deposition)[4]; and (iii) Plaintiff's "expert" witness. (*Id.* at ¶ 20.)

4.      <u>Post-Discovery Proceedings</u>

On August 23, 2023 – months after the briefing on the MSJ had been completed – Plaintiff had filed an expert report and declaration by Robert Aft in further opposition to the MSJ (the "Aft Report"). (ECF No. 101.) Accordingly, following the discovery period, Defendants made two supplemental filings: (1) objections to and a motion to strike the Aft Report; and (2) a supplemental submission in support of the MSJ. (ECF Nos. 103-105.) Plaintiff then filed an *ex parte* application to continue the MSJ hearing, which Defendants opposed. (ECF Nos. 107, 109.)

At the September 18, 2023 hearing, the Court indicated that before ruling on the

---

[4] After less than an hour on the record, the witness – who is Plaintiff's godmother and publicist and who was represented by Plaintiff's counsel – abruptly terminated it against Defendants' objections and with Plaintiff's counsel's acquiescence. (*Id.* at ¶ 20.) During the brief period in which Plaintiff's witness, Ms. Jeter, was examined, she admitted that Plaintiff wrote the declaration that Ms. Jeter had signed and that she had no recollection of anything related to the supposed meeting beyond what Plaintiff had written for her. (*Id.* at Exh. 8.)

5

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel    213.788.7385 fax

300332975

1    MSJ or motion to strike, it would review the ruling in *Skidmore as Trustee for Randy*

2    *Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) to determine whether

3    evidence of Defendants' purported access to Plaintiff's works had any relevance to the

4    issue of substantial similarity. (ECF No. 113.) The Court then ruled that access evidence

5    has *no relevance* to substantial similarity – as Defendants had observed since Plaintiff

6    first sought to introduce such evidence in opposition to the MSJ. (ECF No. 115.) The

7    Court also issued an order permitting Plaintiff to file a supplemental opposition to the

8    motion to strike and Defendants to file a supplemental reply. (ECF No. 116.)

9        Plaintiff filed a "Restated and Supplemental Memorandum" in opposition to

10    Defendants' motion to strike the Aft Report. (ECF No. 121.) But Plaintiff *also* filed a

11    "Supplemental Memorandum" in opposition *to the MSJ*, which the Court had not

12    authorized. (ECF No. 118.) Defendants therefore had to file not only a reply in support

13    of their motion to strike the Aft Report, but also a further reply in support of the MSJ to

14    address Plaintiff's improper supplemental submission. (ECF Nos. 127, 128.) On

15    December 7, 2023, the Court granted Defendants' MSJ and Defendants' motion to strike

16    the Aft Report. (ECF Nos. 132, 133.)

17    **III.    LEGAL STANDARDS**

18        The Copyright Act authorizes a district court to "award a reasonable attorney's fee

19    to the prevailing party as part of the[ir] costs." 17 U.S.C. § 505. For purposes of awarding

20    fees, "[p]revailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty*

21    *v. Fantasy Inc.*, 510 U.S. 517, 534 (1994); *see also Kirtsaeng v. John Wiley & Sons, Inc.*,

22    579 U.S. 197, 202 (2016) ("defendants should be 'encouraged to litigate [meritorious

23    copyright defenses] to the same extent that plaintiffs are encouraged to litigate

24    meritorious claims of infringement.'") (internal citation omitted). A successful defense

25    of a copyright furthers "the Copyright Act's primary purpose of encouraging the

26    production of original literary, artistic, and musical expressions for the public good just

27    as much as a successful challenge by a putative author." *Moi v. Chihuly Studio, Inc*, 2019

28    WL 6033367, at *2 (C.D. Cal. Nov. 14, 2019) (citing *Fogerty,* 510 U.S. at 535).

Katten

KattenMuchinRosenmanLLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.6445 tel    213.788.7360 fax

6

300332975

In deciding whether to award attorneys' fees, courts conduct a case-by-case analysis and consider, but are not limited to, the following five factors: "'(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) [objective] reasonableness of [the] losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence.'" *Tresóna Multimedia, Ltd. Liab. Co. v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020) (citing *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006)); *see also Fogerty*, 510 U.S. at 534 n.19. Substantial weight should be given to the fourth factor – the objective reasonableness of the non-prevailing party's position. *Kirtsaeng*, 579 U.S. at 209; *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018). Nonetheless, a court may award attorneys' fees to a prevailing defendant "even when the losing party advanced a reasonable claim." *Kirtsaeng*, 579 U.S. at 199.

## IV.  DEFENDANTS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES IN DEFENDING AGAINST PLAINTIFF'S CLAIMS.

### A.  <u>Defendant Achieved Complete Success On The Merits.</u>

The first factor examines the prevailing party's degree of success and "weighs more in favor of a party who prevailed on the merits, rather than on a technical defense." *DuckHole Inc. v. NBCUniversal Media LLC*, No. CV-12-10077-BRO, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013) (citing *Fogerty*, 510 U.S. at 556). Defendants unquestionably satisfy this first factor because defeating all of Plaintiff's claims on a motion for summary judgment constitutes complete success on the merits. *Lawrence v. Sony Pictures Ent. Inc.,* No. CV-04737-SVW, 2011 WL 13217267, at *1 (C.D. Cal. Nov. 5, 2011) (Wilson, S. presiding), *aff'd* 534 Fed. App'x. 651 (9th Cir. 2013) (the "[d]efendants achieved complete success on the merits" where the court granted the defendants motion for summary judgment by "dismissing [p]laintiff's three copyright claims on the merits"); *Gilbert v. New Line Prods., Inc. et al.,* No. CV 09-02231-RGK, 2010 WL 5790688 (C.D. Cal. Dec. 6, 2010) (same).

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel  213.788.7360 fax

300332975

**B.**    <u>**Plaintiff's Claims Were Objectively Unreasonable And/Or Frivolous.**</u>

"Objective unreasonableness" is used to describe claims that have no legal or factual support. *Glass v. Sue*, No. CV 09-8570-RGK SHX, 2011 WL 561028, at *4 (C.D. Cal. Feb. 8, 2011) (citing *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007)).[5] Further, a claim that is not objectively unreasonable at the outset can become so if the litigant continues to pursue it after the litigant knew or should have known that his or her claims had no legal or factual support. *Erickson Prods. Inc. v. Kast*, No. 5:13-CV-05472-HRL, 2016 WL 3951659, at *2 (N.D. Cal. July 22, 2016). With respect to copyright infringement claims, a plaintiff's conduct is objectively unreasonable if there is a "lack of any meaningful or legally cognizable similarity." *Gable v. Nat'l Broad. Co.*, No. CV084013SVWFFMX, 2010 WL 11506430, at *5 (C.D. Cal. Aug. 6, 2010) ("The significant differences between the works, on every level except that of unprotected ideas, were obvious from a review of the two works. Thus, Plaintiff's claim was objectively unreasonable."); *Marcus*, 2017 WL 5592470, at *3 (plaintiff failed to identify any protectable similarities between the works in question). When a district court rules on the merits of a copyright claim, as in this case, it "can easily assess whether the losing party advanced an unreasonable claim or defense." *Kirtsaeng*, 579 U.S. at 206.

Similarly, a claim is considered frivolous "when the 'result is obvious or the arguments are wholly without merit.'" *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *8 (citing *Glass*, 2011 WL 561028, at *3), *aff'd*, 847 F.3d 657 (9th Cir. 2017). However, bad faith or frivolousness "is not essential" to a fee award under the Copyright Act. *DuckHole*, 2013 WL 5797204, at *2; *see also Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) (affirming defendants' $1.3 million attorney fee award even though plaintiff's claims were "neither frivolous nor prosecuted in bad faith"); *Perfect 10*, 2015 WL 1746484, *9 ("[T]he fact that Perfect

---

[5]    *See also Lawrence*, 2011 WL 13217267, at *4 (noting that numerous courts have awarded fees in similar cases where the plaintiff insisted on pursuing obviously groundless copyright infringement claims).

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

300332975

1   10's copyright claims were not frivolous . . . does not undermine the Court's ultimate

2   conclusion that attorneys' fees . . . are appropriate in this case.")

3       Plaintiff's claims of copyright infringement and, in particular, her allegations that

4   *P-Valley* is substantially similar to protected expression in *SKC* were both factually and

5   legally unreasonable based on a comparison of the works, as evidenced by the Court's

6   detailed summary judgment ruling. This Court repeatedly rejected Plaintiff's claimed

7   similarities on the grounds that they were unprotectable ideas and *scenes-a-faire* that

8   flow from the idea of a work set in a cabaret or strip club. (ECF No. 133 at 21.)

9       More importantly, in *every* category of the extrinsic test, the Court concluded that

10  one or more of Plaintiff's comparisons were based on mischaracterizations of either *SKC*

11  or *P-Valley*, or both. For example, the Court found that Plaintiff "mischaracterizes *SKC's*

12  depiction of Tata Burlesque. Tata is a gay man, while Uncle Clifford is a non-binary

13  person." (*Id.* at 22.) Plaintiff "also mischaracterizes the language used in each work's

14  hostage scenario." (*Id.* at 27.) Plaintiff "mischaracterizes *SKC* in describing its mood as

15  'noir.'" (*Id.* at 28.) Plaintiff "mischaracterizes the cabaret in *SKC*; it is well lit, clean, and

16  spacious. . . . By contrast, the Pynk is dirty, crowded, loud, and dark." (*Id.* at 30.)

17  "Plaintiff mischaracterizes the pace at which *SKC* is told." (*Id.* at 31.) Regarding the

18  works' selection and arrangement of otherwise unprotected elements, the Court observed

19  that Plaintiff's comparison was "plagued with mischaracterizations." (*Id.* at 44.)

20      With respect to the character comparisons, after filtering out unprotectable

21  similarities the Court found that "[t]he remaining similarities addressed by Plaintiff are

22  mischaracterizations of the works in question." (*Id.* at 34.) The Court described Plaintiff's

23  comparison of "pivotal moments" supposedly shared by Brandy in *SKC* and Haley in *P-*

24  *Valley* as "blatant mischaracterizations." (*Id.*) Plaintiff also "mischaracterizes the works

25  to manufacture a similarity about an 'inside man;'" "mischaracterizes who is taken

26  hostage;" and mischaracterizes "that both characters [Mike and Diamond] wear a

27  necklace that references grandparents." (*Id.* at 40, 41, 43.) The Court also observed:

28  "Plaintiff has also inappropriately cited to a script for a proposed television pilot

9

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.6445 tel   213.788.7380 fax

1    adaptation of *SKC*. That script is not in the record, and the Court has no evidence that

2    that script was properly registered with the U.S. Copyright Office." (*Id.* at 19, n. 9.)

3          Had Plaintiff or her attorneys forthrightly applied the applicable legal principles to

4    their comparison, it would have been "obvious" that there were "significant differences"

5    between the works and that most, if not all, of the purported similarities were unprotected

6    ideas, *scenes-a-faire*, or patent mischaracterizations of one work or the other, as the Court

7    concluded. *See Gable*, 2010 WL 11506430, at *5. Instead, Plaintiff rejected these very

8    arguments each time Defendants raised them, including *before* Plaintiff filed her action.

9          In their May 11, 2021, letter to Plaintiff's counsel, Defendants explained: "*P-*

10    *Valley* and *SKC* share nothing in common aside from generic plot lines and scènes à

11    faire;" and "[a]lthough both works feature a cast of female dancers who work at a club,

12    this is utterly banal and the subject of multiple films and television series." (DH Decl.,

13    Exh. 2.) Defendants made clear that "Plaintiff's claim that both works involve a club that

14    may be taken over in connection with the development of a casino . . . is at best a

15    misleading description of claimant's work" because "in *SKC*, the potential casino

16    development is a minor plot point that is only mentioned twice and never discussed in

17    any detail" and that "the story's primary focus is on Frank's pursuit of his 'rightful

18    inheritance." (*Id.*) Defendants also pointed out that "the only way Tata [Burlesque] could

19    lose the SKC . . . is if Tata breaks three of the 'Soul Kitten commandments," while in *P-*

20    *Valley*, "Uncle Clifford is at risk of losing the property to foreclosure because he owes

21    past due payments on the property." Defendants rejected Plaintiff's claim that Tata

22    Burlesque and Uncle Clifford were both gender-fluid as "demonstrably false" because

23    "Tata is not gender-fluid; he is a gay man who is portrayed wearing masculine clothing

24    throughout the entire work" and that, "[b]y stark contrast, Uncle Clifford in *P-Valley* is

25    gender-fluid, as she wears feminine clothing, wigs, make up and long acrylic nails, and

26    refers to herself using feminine pronouns." (*Id.*) And Defendants observed that it was a

27    "gross oversimplification" for Plaintiff to claim that in both works a dancer "saves the

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

club from closing" because "the context of each storyline, including who is involved, who saves the day and how, differ significantly." (*Id.*)

Despite Defendants' detailed pre-suit analysis, Plaintiff filed this action, relying on every putative similarity and blatant mischaracterization that Defendants had rebutted. (*Id.* at ¶ 5.) When Defendants' counsel raised these same issues prior to filing their motion to dismiss, Plaintiff insisted on proceeding with her claims. (*Id.* at ¶_.) Likewise, Plaintiff aggressively (albeit disingenuously) opposed Defendants' MSJ, as well. The Court's findings make clear that Plaintiff's allegations regarding substantial similarity were not remotely supported by facts or the law and were therefore objectively unreasonable, if not frivolous.

## C. <u>Plaintiff's Motives In This Action Were Improper.</u>

Plaintiff's litigation conduct and public statements demonstrate that Plaintiff threatened, filed, and publicized this lawsuit to coerce a settlement from Defendants, promote her career, and publicly disparage Defendants – especially Ms. Hall, whom Plaintiff has singled out for denigration. Plaintiff's exploitation of this action to serve such motives strongly evidences bad faith and militates in favor of an award of fees.

A finding of bad faith may be based on a plaintiff's conduct that "suggests an intent to force Defendant[] to expend significant resources on litigation in order to coerce a settlement." *Shame on You*, 2016 WL 5929245, at *9. Bad faith, while not necessary to an award of fees, can be based on a plaintiff's actions both in bringing the lawsuit and during the course of the litigation. *Marcus*, 2017 WL 5592470, at *4.

Plaintiff's bad faith in pursuing this action is evidenced, first and foremost, by her blatantly dishonest "scene similarities." At least **10** of Plaintiff's 57 claimed similarities – nearly 20% – do not derive from *any* of her three registered *SKC* works. Rather, Plaintiff took them from her *unregistered* television pilot script, entitled *Curtains*, which is not part of her lawsuit.[6] Plaintiff thus misrepresented the contents of her protected *SKC*

---

[6] *See* Plaintiff's "Scene Similarity" Nos. 1, 2, 4, 6, 11, 21, 42, 48, 50, 53. (ECF No. 72-3 (Exhibit 3 to Gilbert-Daniels Declaration).)

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

315 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.2425 tel   213.788.7360 fax

**Katten**

works when she asserted to the Court that scenes from *Curtains* in fact appear in *SKC*. Plaintiff's improper motivation is further supported by her reliance on *an additional* 10 purported similarities that this Court found to be "mischaracterizations" of *SKC* and/or *P-Valley*. (ECF No. 133 at pp. 22, 27, 28, 30, 31, 34 (2), 40, 41, 43.) Plaintiff objectively had to know that these claimed similarities were disingenuous at best.

Moreover, throughout the course of this litigation, Plaintiff has made it obvious that her objective was to obtain a substantial payout despite the lack of merit of her claims. She relentlessly litigated her claims on social media,[7] repeatedly attacking and disparaging the reputations of *P-Valley's* creator (Ms. Hall) and both Starz and Lionsgate. (DH Decl., ¶ 24.) She uploaded to social media certain court filings in wholesale fashion in which she likewise disparaged Defendants. (*Id.*) This evidence establishes a strong probability that Plaintiff's social media tactics were in furtherance of her goal to pressure Defendants into an unjustified settlement.[8] On December 6 (the day

---

[7] Plaintiff's relentless social media postings also appear to have been designed to promote her own entertainment content and generate publicity for herself. At least one court has held that generating publicity is in improper motive for filing a copyright action. *See Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351, 358 (S.D.N.Y. 2006) (Plaintiff's "true motivations" included "an attempt to garner publicity for [the plaintiff's] agent and for his lawyers.")

[8] In the last eight months or so, Plaintiff has posted content pertaining to this litigation on more than 20 occasions. *See* ECF No. 122 for a more fulsome discussion of these posts, which include:

- "I will continue to amplify my struggle.... Meanwhile, I am encouraged to be silent pay hundreds of thousands in legal fees and be faced with threats of 'Defamation Lawsuits' simply for sharing my story.... I'm gone [sic] share my story anyway because NO CREATIVE should have to endure this level of Corporate Bullying."

- "The multi-billion dollar defendants are pulling out all the stops trying several times to get my case dismissed due to lack of 'Substantial Similarities'.... The stories are the same BEGINNING MIDDLE & END even when comparing a 2 hr stage play to a 10 hour series.... It's a sad fact that many plaintiffs lose at this phase of their case…BUT GOD & This evidence he gave us makes it ALL WORTH THE RISK!"

- "It's deposition time Baby we bouta find out why Katori Hall got 100mm to produce such a 'Substantially Similar' Story Don't Believe Me JUST WATCH the LINK"

- "Tomorrow is the day we have been waiting 3 years for. I need all my Prayer Warriors on deck to Pray that the judge SEES THE SUBSTANTIAL SIMILARITIES & Denies the defendants Summary Judgment Motion."

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

300332975

before the Court granted the MSJ), Plaintiff posted an approximately 30-minute YouTube video[9] that included, *inter alia*, the following:

- Regarding Ms. Hall, Plaintiff stated: "Before y'all go thinking that Katori Hall is a Black woman, as far as I'm concerned, Katori Hall got Black skin." (9:11.) Likewise, Plaintiff stated that "Katori Hall knows flat out, no ifs, ands, or buts about it, that the similarities in these stories are uncanny." (13:00.) Plaintiff later stated that Ms. Hall is "a coward and she doesn't want to tell the truth." (26:08.)

- Plaintiff also exploited the fact that the depositions in this action are designated confidential subject to the Court's protective order.[10] Plaintiff asserted that Ms. Hall's and "the CEO of Lionsgate's" deposition "is not going to even be available for y'all to see because they have put it under redacted seal . . . they don't want you to see what they said about the similarities of this thing." (9:50.)

- Plaintiff also misleadingly described this Court's MSJ proceedings. In an apparent reference to the Court's September 18, 2023, MSJ hearing, she asserted: "In the hearing transcript, which is public, the judge said, 'This is a matter for dispute'" (meaning the question of substantial similarity. (18:12.)

- Plaintiff admitted that her tactics were intended to induce a settlement payment: "Why didn't y'all simply settle this thing with me? Because that's what I asked y'all to do quietly . . . It was 'oh, well, you want it to go away, here's two quarters and a nickel for your ass.'" (23:14.) Similarly, she asserted: "I've tried over and over and over and over to settle with these people." (28:00.)

- Plaintiff repeatedly bemoans during the video not having been able to resolve the lawsuit. (7:16.) She gives a "shout-out" to the people who have supported her (8:06) and explains that part of the reason cases resolve more quickly is because people

---

- Quoting the Aft Report and implying that it was issued by an independent expert: "the Starz series P-VALLEY uses an overwhelming number of elements taken directly from Ms. Gilbert-Daniels's play/film, THE SOUL KITTENS CABARET."

[9] *See* https://www.youtube.com/watch?v=4WaVK3s3Dyg.

[10] *See* ECF No. 120 at 2, n.1.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

Katten

135 South Flower Street, Suite 9000
Los Angeles, CA 90071-3212
213.788.6445 tel   213.788.7360 fax

are talking about the case and "demanding justice." (8:35.) Later in the video, she exhorts her social media followers to re-post Plaintiff's videos purporting to show similarities between *P-Valley* and *SKC*, stating: "You guys, share the clips.  You guys, tell the truth and shame the devil."  (28:30.)

That same day, Plaintiff also posted a video titled "P Valley Unveiled: Nicci Gilbert's Epic Deep Dive – Part 1,"[11] purporting to show her viewers the same comparisons between *SKC* and *P-Valley* that she asserted in this action. Tellingly, Plaintiff remarked in the video: "I know that many of us would like for this thing to go the way that things went with this recent case that was settled in 24 hours [referring to an unrelated lawsuit], but unfortunately that's not always how it works. (7:43.)  She asserted: "I attempted, my attorneys attempted . . . to have a very private, amicable conversation . . . . I felt like I was disregarded." (12:30.) "Couple times, I tried as hard as I could to just resolve this amicably so no one even had to know." (14:09.)[12]

Plaintiff's statements and conduct amply evidence her improper efforts to drive up Defendants' costs and expose them to unwanted publicity. As detailed above, Plaintiff: (i) demanded an exorbitant pre-suit settlement payment; (ii) accused Lionsgate's CEO of using *SKC* pitch material to develop *P-Valley*, even though **Starz** developed *P-Valley* when Starz and Lionsgate were unrelated companies [ECF No. 70 at 10]; (iii) served a deluge of discovery, virtually none of which related to the MSJ [*see e.g.*, ECF No. 90]; (iv) filing in further opposition to the MSJ a putative expert report 8½ weeks after the MSJ had been fully briefed [ECF Nos. 75, 101] and then refused to reasonably schedule Mr. Aft's deposition, forcing Defendants to take his deposition from 6:30 p.m. to **4:30 a.m.** EST on the last day of discovery [DH Decl. ¶ 25]; (v) published the Aft Report on social media, misleadingly implying that Mr. Aft was an independent expert [*see* ECF No. 122, ¶¶ 12, 13]; (vi) in an apparent bid to cause the confidential-designated deposition

---

[11] https://www.youtube.com/watch?v=rrcLZVHtppE.

[12] In October 2023, while the MSJ was pending, Plaintiff sent Defendants two more settlement demands, each for $7.5 million. Defendants declined to respond to either demand. (DH Decl., ¶_ and Exhs. _, _.)

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.1443 tel    213.788.7360 fax
300332975

transcripts of Defendants' witnesses to become public, filed the transcripts in their *entirety* under seal, and then filed a bizarre response to Defendants' L.R. 79-5.2.2 sealing declaration, even though the declaration was a necessary procedural step to maintain the transcripts under seal [ECF No. 123]; and (vii) filed an unauthorized supplemental opposition to the MSJ in addition to a series of *ex parte* applications, each of which required Defendants to respond [ECF Nos. 79, 107, 118]. Even without Plaintiff's public commentary, this litigation conduct belies any proper or legitimate motivation; with Plaintiff's public comments making her motives clear, this factor weighs heavily in favor of awarding fees.

**D.    Awarding Attorneys' Fees And Costs Would Deter Meritless Infringement Claims.**

This factor is intended to deter opportunistic plaintiffs from bringing frivolous and unreasonable claims and to ensure that defendants are encouraged to protect their legitimate rights. *See Scott v. Meyer*, No. CV 09-6076 ODW(RZX), 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010) ("Deterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both laudable ends."); *AF Holdings LLC v. Navasca*, No. C-12-2396 EMC, 2013 WL 3815677, at *3 (N.D. Cal. July 22, 2013) ("[T]here is a strong argument in favor of awarding fees as a deterrent, both with respect to [plaintiff] and other persons or entities that might contemplate a similar business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements."). Awarding fees in cases like this is vital because it provides parties with "every incentive to keep fighting" against meritless infringement claims "no matter that attorney's fees in a protracted suit might be as or more costly than a settlement." *Kirtsaeng*, 579 U.S. at 205. Thus, this factor also supports a fee award in this case, given that (i) Plaintiff admits she had hoped to extract a settlement from Defendants, and (ii) Defendants were forced to protect their rights against a meritless claim via summary judgment rather than capitulate to inappropriate settlement pressure.

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.6445 fax    213.788.7360 tel

15

Finally, in evaluating this fee motion, the Court does *not* consider whether Plaintiff is capable of paying any fee award because, otherwise "indigent plaintiffs could bring wholly frivolous suits against successful [creators] in the hopes of negotiating a nuisance settlement, without any concern about having to pay attorneys' fees if the case were to go forward." *Gable*, 2010 WL 11506430, at *9 n.10 (granting approximately $500,000 in attorneys' fees against purportedly indigent defendant). "Such a result would not serve the purposes of deterring frivolous claims, nor would it encourage original authors to vindicate their rights against frivolous infringement suits." *Id.*

Awarding Defendants their reasonable attorneys' fees and costs will further incentivize similarly situated defendants to fight meritless claims of infringement. It will also deter plaintiffs from pursuing similar infringement claims without first looking closely at the legal merits and relative strengths and weaknesses of their claims and considering the economic consequences of having their claims rejected on the merits. Defendants were required to expend resources not only on the motion to dismiss and subsequent MSJ, but also extensive discovery, discovery motions, a successful evidentiary motion (to strike the report of Plaintiff's purported expert) and other litigation activity. Such costs should not be borne by Defendants.

**E.**  **Granting This Fee Motion Would Further The Interests Of The Copyright Act.**

The Copyright Act aims to "enrich[] the general public through access to creative works." *Fogerty*, 510 U.S. at 527. To that end, "[a] successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014). This is particularly so where the defendant's "defense also nudge[s] copyright law in the direction of 'free expression' by appealing to basic principles about the unprotectability of ideas, instead of relying on 'technical defense[s], such as the statute of limitations, laches, or the copyright registration requirements.'" *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC RNBX, 2011 WL 3420603, at *2 (C.D. Cal. Aug. 4, 2011) (citing

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4445 tel   213.788.7360 fax

16

*Fantasy*, 94 F.3d at 556), *aff'd sub nom. Mattel, Inc v. MGA Ent., Inc.*, 705 F.3d 1108 (9th Cir. 2013).

Awarding fees in connection with meritless infringement claims "will encourage artists to continue producing original works without fear of having to defend against baseless claims." *Shame On You Prods.*, 2016 WL 5929245, at *11; *see also Fogerty*, 510 U.S. at 527 ("[T]he successful defense of 'The Old Man Down the Road' increased public exposure to a musical work that could, as a result, lead to further creative pieces"); *Scott*, 2010 WL 2569286, at *4 ("The successful defense against Plaintiff's copyright infringement claims will assure that [defendant's] literary work remains available to the public, thus furthering the goal of 'stimulat[ing] artistic creativity for the general public good' and perhaps 'lead to further creative pieces.'" (citing *Fantasy*, 94 F.3d at 559)).

Based on the factors discussed above, a fee award in this case would further these settled policy interests. Thus, every factor under Section 505 weighs in favor of an award.

## V.    DEFENDANTS' ATTORNEYS' FEES AND COSTS ARE REASONABLE.

### A.    Defendants' Attorneys' Rates Are Reasonable.

District courts use the lodestar method to calculate an award for attorneys' fees. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). This method takes the number of hours reasonably expended on the litigation and multiplies it by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). The prevailing market rate in the community is indicative of an attorney's reasonable hourly rate. *Blum v. Stevenson*, 465 U.S. 886, 895-96 n.11 (1984) (the requested rates must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").

"There is a strong presumption that the lodestar figure represents a reasonable fee. 'Only in rare instances should the lodestar figure be adjusted on the basis of other considerations.'" *Morales*, 96 F.3d at 363 n.8 (citing *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) and *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992)).

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4445 tel  213.788.7360 fax

Finally, although a prevailing party must provide evidence to support the hours spent on litigating meritless claims, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The fee applicant's records need not be extraordinarily detailed but should identify the general subject matter of the claimed time expenditures. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12.

Katten staffed this matter leanly at all times. Defendants initially were represented by only one litigation partner, David Halberstadter, one senior associate, Joanna Hill, and one junior associate, Shelby Palmer, all of whom had extensive entertainment and copyright experience. Mr. Halberstadter was primarily responsible for defending this action on behalf of Defendants throughout the course of the litigation (DH Decl., ¶ 29.)

Mr. Halberstadter has practiced as a litigator in Los Angeles for over 40 years. He was a Partner specializing in entertainment-related and intellectual property litigation at Troop Steuber Pasich Reddick & Tobey, LLP for 10 years (from 1990-2000) prior to becoming a partner at Katten in 2000. He has practiced intellectual property and entertainment litigation continuously for more than 35 years. He has received numerous professional recognitions. (*Id.* at ¶ 30.) Mr. Halberstadter's hourly rate in April 2021 when Katten first began representing Defendants in this action was $1,115. In 2022, his hourly rate increased to $1,220 and in 2023, to $1,400.[13] However, once Starz's "insured retention amount" (i.e., the insurance deductible) was met in or about January 2022, Katten billed Mr. Halberstadter's time at the insurance company-approved hourly rate of $660 for the remainder of the representation. (*Id.* at ¶ 31.)[14]

---

[13] *See Title Tracy Anderson Mind & Body v. Roup et al*, No. CV-04735-PSG, 2023 WL 6890744, at *2 (C.D. Cal. 2023) (finding the rate of $1,065 an hour reasonable for a partner with 15 years' experience).

[14] *See Good Job Games Bilism Yazilim ve Pazarlama A.S. v. SayGames, LLC, et al.*, No. CV-07916-EMC, 2023 WL 3260528, at *9 (N.D. Cal. May 4, 2023) ("[I]n an action

18

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7260 fax

At the time Ms. Hill was assigned to this matter, she had approximately seven years of notable copyright litigation experience, including having taken a senior role in the successful defense of multiple copyright infringement claims. Katten billed her time at an hourly rate of $835 in 2021 and $915 in 2022. However, once Starz's insured retention amount was met in or about January 2022, Katten thereafter billed her time at the insurance company-approved hourly rate of $465. (*Id.* at ¶ 32.) Ms. Palmer graduated from University of Southern California, Gould School of Law in 2019. During the time that Ms. Palmer was involved in this matter, she had two years of entertainment litigation experience; her hourly rate was $585 in 2021 and $705 in 2022. However, once Starz's insured retention amount was met in or about January 2022, Katten thereafter billed her time at the insurance company-approved hourly rate of $465. (*Id.* at ¶ 33.)[15]

In or about April 2022, as Ms. Hill was preparing to leave Katten to join Apple TV+, partner Tami Sims stepped in to replace her. During her involvement in the defense of Plaintiff's action, Ms. Sims had over 16 years of practice as an entertainment and IP litigator. She had also served as a Ninth Circuit judicial clerk. In 2022, Ms. Sims's hourly rate was $985 and in 2023, her hourly rate was $1,115. However, because Ms. Sims joined the defense team after Starz's insured retention amount had been met, Katten billed her time at the insurance company-approved hourly rate of $660. Moreover, because Ms. Sims's seniority and experience enabled her to take on greater responsibility than Ms. Hill had, Mr. Halberstadter was able to reduce to some degree the amount of time he spent on the matter. To the best of their ability, Ms. Sims and Mr. Halberstadter did not perform duplicate work. (*Id.* at ¶ 34.)

In or about January 2022, when Ms. Palmer was preparing to leave Katten, first-year associate, Amelia Bruckner, replaced her on the defense team. Her hourly rate in 2022 was $580 and $705 in 2023. Nevertheless, Katten billed her time at the insurance

under the Copyright Act, an award based on the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505.").

[15] *See Title Tracy Anderson Mind & Body*, 2023 WL 6890744, at 2 (finding $655 an hour reasonable for a junior associate).

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4400 tel    213.788.7360 fax

company-approved rate of $465. (*Id.* at ¶ 35.) In or about April 2023, when this action was transferred to the Central District of California and Defendants began preparing to re-file their motion to dismiss, first-year associate Michael Butts joined the defense team. Mr. Butts' hourly rate in 2023 was and is $640; nevertheless, Katten billed his time at the insurance company-approved hourly rate of $465. (*Id.* at ¶ 36.) Finally, in or about June 2023, Ms. Sims left Katten to join Warner Bros. Discovery. She was not replaced; instead, Mr. Halberstadter took on all the partner-level work and Ms. Bruckner and Mr. Butts assisted him. (*Id.* at ¶ 37.)

Defendants' undiscounted hourly rates are reasonable in light of the prevailing market rates and defense counsels' experience.[16] (DH Decl. ¶¶ 38-40.) The significantly discounted, insurance-approved rates that counsel *actually* charged in connection with this matter are even more so.

**B.    Counsel for Defendant Spent A Reasonable Amount Of Time Litigating The Merits Of Plaintiff's Action, Considering How Much Work Was Involved.**

There is no question that Defendants' counsel expended a significant amount of time defending against Plaintiff's claims from April 2021 (when Plaintiff first asserted her claims) through December 7, 2023 (when the Court granted the MSJ). Over the duration of this period, Defendants' counsel billed the following aggregate hours:

| Attorney | Hours |
|---|---|
| Bruckner, Amelia (associate) | 618.6 |
| Butts, Michael (associate) | 189.4 |
| Halberstadter, David (sr. partner) | 644.7 |

---

[16]    *See e.g. WB Music Corp. v. Royce Int'l Broad. Corp.*, 2018 WL 6177237, at *5 (C.D. Cal. July 9, 2018) (in copyright infringement action decided three years ago, rate of $742.50 to $778.50 an hour was reasonable for a Senior Counsel at Arnold & Porter, rate of $495 an hour was reasonable for an associate "right out of law school"); *Perfect 10*, 2015 WL 1746484, at *30 (in infringement action decided six years ago, a partner at Fenwick & West with 29 years' experience reasonably charged between $825 and $930 an hour).

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.1229 tel   213.788.7360 fax

20

| Sims, Tami (jr. partner) | 152.4 |
|---|---|
| Freedman, Janie (paralegal) | 0.8 |
| Hill, Joanna (sr. associate) | 173.4 |
| Palmer, Shelby (associate) | 25.9 |
| **Total** | **1805.2** |

A "top-level" summary of the services Defendants' counsel rendered in connection with their defense of Plaintiff's claims amply justifies this expenditure of time. The work included the following tasks, among many others:

**(1)** Conducting the initial claims investigation, including reviewing Plaintiff's works, Defendants' television series and Plaintiff's asserted similarities, and responding to Plaintiff's claim; **(2)** Engaging in ongoing pre-litigation communications with Plaintiff's counsel about Plaintiff's claims; **(3)** Analysis of Plaintiff's complaint, the efficacy of a motion to dismiss, a motion to transfer venue and potential personal jurisdiction challenges; **(4)** Negotiating with Plaintiff for the filing of a consent motion to seal Plaintiff's originally filed complaint, which identified the home addresses of the individual defendants in violation of Northern District of Georgia rules; **(5)** Negotiating for the voluntary dismissal of defendant Legendary Entertainment, which had no involvement with the *P-Valley* series; **(6)** Researching and drafting Defendants' motion to dismiss or transfer Plaintiff's complaint, reviewing Plaintiff's opposition, preparing a reply in support of the motion, and reviewing/analyzing the court's ruling thereon; **(7)** Initial litigation activity following the transfer of Plaintiff's action to the Central District of California, including (i) review of the initial case filings and this Court's New Case Order, (ii) responding (jointly with Plaintiff) to the Court's Order to Show Cause Re Dismissal for Failure to Prosecute, (iii) beginning to revise Defendants' motion to dismiss the complaint to conform to Ninth Circuit precedents rather than Eleventh Circuit law, and (iv) reviewing the Court's subsequent orders, including its order that Defendants re-file their motion to dismiss as a motion for summary judgment; **(8)** Reviewing and

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS

opposing Plaintiff's *ex parte* application for an order vacating the July 5, 2023 hearing date on Defendants' MSJ, reviewing Plaintiff's reply and the Court's eventual order denying Plaintiff's application; **(9)** Drafting and filing the MSJ, including Defendants' separate statement of uncontroverted material facts and conclusions of law and supporting evidence; **(10)** Reviewing Plaintiff's opposition to the MSJ (including her opposition memorandum and cases cited therein, her statement of genuine disputes of material fact, Plaintiff's supporting declaration and exhibits [including her audiovisual comparison of *SKC* and *P-Valley*);[17] drafting Defendants' reply memorandum in support of their MSJ, Defendants' response to Plaintiff's statement of genuine disputes of material fact, objections to Plaintiff's declaration and supporting exhibits; and subsequently reviewing Plaintiff's response to Defendants' objections to her declaration and exhibits; **(11)** Reviewing and analyzing the July 5 Order, communicating with Plaintiff about its scope and jointly seeking clarification, and drafting a proposed joint stipulation for clarification that Plaintiff ultimately declined to agree to; **(12)** Preparing a joint stipulation requesting a stay of discovery pending expedited mediation, which the Court denied; **(13)** Preparing for mediation (including drafting a confidential mediation brief) and attending mediation; **(14)** Reviewing and responding to individual sets of requests for admission, interrogatories and requests for production of documents that Plaintiff served on each of the six Defendants, as well as on previously-dismissed defendant Legendary Entertainment and non-party Mr. Feltheimer; **(15)** Communications with Plaintiff regarding deposition scheduling, the permissible scope of discovery, meeting and conferring in preparation for a discovery conference with Magistrate Judge Rosenberg; **(16)** Participating in a discovery conference with Judge Rosenberg; **(17)** Pursuant to Judge Rosenberg's order, preparing and filing Defendant

---

[17] In its order granting Defendants' MSJ, this Court commented on a number of difficulties in its review that were created by Plaintiff's presentation, including that "Plaintiff referenced numerous instances in *SKC* and *PV* without providing citations or time stamps," and "[m]ore vexingly, Plaintiff also presented lists of similarities between *SKC* and *PV* that drew on multiple versions of *SKC* without distinguishing between them." (ECF No. 133 at 19.) These issues similarly increased the time Defendants needed to spend in reviewing Plaintiff's opposition in order to prepare their reply.

Lionsgate's *ex parte* application for a protective order respecting the deposition of Mr. Feltheimer; **(18)** Reviewing Plaintiff's opposition to the *ex parte* application and preparing Lionsgate's reply in support of the application; **(19)** Preparing for and participating in the hearing on Lionsgate's application; **(20)** Reviewing and analyzing Plaintiff's belatedly-filed Aft Report; **(21)** Researching Plaintiff's social media posts concerning the litigation and claims of unlawful copying; **(22)** Drafting and serving objections to the written discovery that Plaintiff had served; **(23)** Gathering, reviewing and preparing for the production of documents responsive to Plaintiff's requests for production to the six Defendants (in excess of 16,000 pages produced); **(24)** Drafting and serving requests for production to Plaintiff, reviewing Plaintiff's response to same and the documents she produced in response; **(25)** Preparing for and defending the depositions of Mr. Feltheimer and actor Nicco Annan, and preparing for and attending the deposition of Ms. Hall (who was defended by Cynthia Arato, co-counsel for Ms. Hall); **(26)** Preparing for and taking the depositions of Plaintiff and Ms. Jeter, and attending the deposition of Mr. Aft (which was taken by Ms. Arato); **(27)** Preparing Defendants' supplemental submission in support of its MSJ (as permitted by the July 5 Order); **(28)** Preparing Defendants' objections to and motion to strike the Aft Report; **(29)** Reviewing and opposing Plaintiff's *ex parte* application to continue the MSJ hearing, and reviewing Plaintiff's reply in support of that application; **(30)** Reviewing Plaintiff's response to Defendants' objections to and motion to strike the Aft Report, and preparing and filing Defendants' reply in support of its motion to strike; **(31)** Preparing for and attending the September 18, 2023 hearing on Defendants' MSJ; **(32)** Preparing and filing Defendants' supplemental submission of legal authorities on the *"Skidmore"* issue that the Court agreed to consider; **(33)** Reviewing Plaintiff's response to Defendants' supplemental submission of legal authorities on the *Skidmore* issue; **(34)** Reviewing the Court's September 27, 2023 Minute Order respecting the *Skidmore* issue; **(35)** Reviewing the Court's September 29, 2023 Minute Order setting a deadline for Plaintiff to file any supplemental opposition to the motion to strike, and for Defendants

Katten

Katten Muchin Rosenman LLP

525 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.6445 tel  213.788.7360 fax

23

to file any additional reply in support of that motion; **(36)** Reviewing Plaintiff's supplemental opposition to the motion to strike, as well as Plaintiff's *unauthorized* supplemental memorandum in opposition to the MSJ; **(37)** Reviewing Plaintiff's application for leave to file certain exhibits and portions of her opposition memorandum under seal; **(38)** Drafting Defendants' L.R. 79-5.2.2 sealing declaration and reviewing Plaintiff's bizarre response; **(39)** Drafting Defendants' further reply in support of their motion to strike the Aft Report; **(40)** Drafting a supplemental reply in response to Plaintiff's unauthorized supplemental opposition to the MSJ; and **(41)** Reviewing the Court's orders granting Defendants' motion to strike and MSJ. (DH Decl., ¶¶ 41-43 and Exh. 11.)

All this work was reasonable and necessary, particularly considering how aggressively Plaintiff litigated her claims and pursued discovery. In fact, in similar copyright infringement matters in this circuit, courts have found that a significantly *greater* number of hours spent by defense counsel to obtain summary judgment was reasonable. *See Moi v. Chihuly Studio, Inc.*, No. CV17-0853RSL, 2019 WL 6033367, at *3 (W.D. Wash. Nov. 14, 2019), *aff'd*, 846 Fed. App'x 497 (9th Cir. 2021) (granting defense motion, after summary judgment, for recovery of $1.65 million in attorneys' fees for over 3,500 hours of work) (*see* Dkt. No. 174-1 at 48 for total hours billed); *Perfect 10, Inc. v. Giganews, Inc. et al.,* CV11-07098AB2015 WL 1746484, at *1, *30 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (granting defense motion for attorneys' fees, following summary judgment, for over 9,000 hours billed with only minor reductions).

Based on the foregoing, Defendants respectfully request that the Court award Defendants the sum of $1,045,436 on account of their attorneys' fees incurred through December 7, 2023, when the Court granted the MSJ.

### C.    Defendants Requests An Award of Allowable Costs.

Defendants also seek $45,447 in allowable costs incurred in this litigation. The Court has the discretion to award litigation costs to Defendant pursuant to 17 U.S.C. § 505. These costs, which include deposition reporting and transcripts, express delivery

Katten

Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.6445 tel    213.788.7360 fax

24

charges, PACER fees, Westlaw legal research charges and Copyright Office charges, also are reasonable and appropriate. (DH Decl., ¶ 44 and Exh. 12.)

D. **Defendants are Also Entitled To Recover Fees And Costs Incurred In Connection With This Motion.**

"'[T]ime spent in establishing the entitlement to and amount of the fee is compensable.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (citing *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985)). Defendant incurred approximately $38,610 in additional fees in connection with attempting to negotiate a settlement with Plaintiff to avoid this motion, as well as researching, drafting and revising this fee motion, the supporting declaration and supporting exhibits. (DH Decl. ¶ 45.]

## VI. CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests that the Court award Defendants their reasonable attorneys' fees and costs in the amount of $1,129,493, as well as additional fees incurred in connection with any supplemental briefing or hearing relating to this motion.

Dated:  January 8, 2024                KATTEN MUCHIN ROSENMAN LLP


By: /s/ David Halberstadter
David Halberstadter
Attorneys for Defendants